FILED
IN CLERK'S OFFICE
US DISTRICT COURT EDNY

★ MAR 14 2016 ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
UNITED STATES OF AMERICA,

              Plaintiff,

              15 CR 00389 (SJ) (VMS)

     -against-           **ORDER ADOPTING REPORT AND RECOMMENDATION**

JOHN STACY HARRISON,

              Defendant.
------------------------------------------------------------X

JOHNSON, Senior District Judge:

John Stacy Harrison ("Defendant" or "Harrison") has pled not guilty to a single-count indictment, charging him with being a Felon in Possession of a Firearm. 18 U.S.C. §§ 922(g)(1), 924 (a)(2) and 3551 et seq. Defendant moves to suppress the firearm and other items seized by Probation Officers during a home visit on July 2, 2015. (See Dkt. No. 21.) Presently before the Court are a Report and Recommendation ("Report") by Judge Vera M. Scanlon denying Defendant's motion to suppress; and Defendant's objections ("Objections"). Familiarity therewith is assumed. (See Dkt. Nos. 21 and 22.)

Within 14 days of service of the recommendation, any party may file written objections to the magistrate's Report. See 28 U.S.C. § 636(b)(1). Upon de novo review of those portions of the record to which objections were made, the district court judge may affirm or reject the recommendations. Id. The Court is not required

1

P-049

to review, under a de novo or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the report and recommendation to which no objections are addressed. See Thomas v. Arn, 474 U.S. 140, 150 (1985).

1. Background

On April 3, 2008, Defendant was convicted of one count of unlawful possession of a firearm and one count of possession of a firearm with the serial number removed in violation of 18 U.S.C. §§922(g)(1) and 922(k). (See 07-CR-00757 Dkt. No. 56.) Defendant was sentenced to 57 months imprisonment and three years of supervised release, pursuant to certain conditions ("Conditions"). GX1. Defendant commenced his supervised release on December 14, 2012. Transcript of Suppression Hearing on December 17, 2015, Dkt. No. 18 ("Tr.") 8.

It is undisputed that Defendant read and understood the conditions of his supervised release, including the search condition at issue in this case. Tr. 7-8; GX 1. The search condition provides: "Defendant shall submit his person, residence, place of business, vehicle or any other premises under his control to a search on the basis that the probation officer has <u>reasonable belief that contraband or evidence of a violation of conditions of release may be found</u>." GX1 (emphasis added).[1] The Conditions also prevent Defendant from possessing a firearm or ammunition; require Defendant to report to the Probation Officer; answer all inquiries truthfully; submit

---

[1] See also 07-CR-00757 Dkt. No. 68, p. 6.

2

monthly reports to the Probation Department identifying the vehicles to which he has access; and permit a probation officer to visit him at any time at home. Id; Tr. 29, 38, 39.

At the suppression hearing on December 17, 2015, Probation Officer Benjamin Goodman-Davis testified that when he was assigned Defendant's case in May 2015, he reviewed Defendant's Probation Department file and learned that Defendant had violated several terms of his release: in August 2014, he traveled outside the district and had been arrested for the alleged transportation of marijuana; and in January 2015, he was arrested for allegedly driving with a suspended driver's license. Id.; Tr. 12, 14. On April 15, 2015, the Court sanctioned Defendant for traveling outside the district by placing him on home confinement with electronic monitoring. Tr. 12; GX 2. Officer Goodman-Davis then sent a letter to Defendant's home, instructing him to appear at the Probation Department on June 9, 2015, which Defendant failed to do. Tr. 14-15; GX 3. This led Goodman-Davis and his partner, Probation Officer Javier Enciso, to visit Defendant at his home on July 2, 2015. Tr. 16. There is no evidence that Defendant attempted to contact Probation Officer Goodman-Davis after his failure to appear.

When the Probation Officers arrived, Defendant attempted to dissuade them from entering the apartment by lying to them about the presence of his girlfriend who was unclothed. Tr. 19, 21, 22, 23, 76, 78. He also picked up an empty wine bottle and informed the officers, "I probably shouldn't have this. Am I going to get into

P-049

trouble for having this?" Tr. 19-20, 77. Probation Officers found Defendant's conduct strange and believed he was nervous and "very uncomfortable." Tr. 20, 22, 80. Goodman-Davis testified, "...there was nothing prohibiting him from having alcohol and it is a [an odd] thing to immediately draw [my] attention to... He appeared uncomfortable." Id. Defendant fidgeted, did not make eye contact and "his eyes [were] going back to the table where he had picked up the bottle." Tr. 22, 80. When Goodman-Davis inquired about other items on the table, Defendant did not respond. Id.; 79, 80.

Officer Goodman-Davis then lifted a towel off the table the Defendant had been looking at, which revealed a loaded Taurus 9-millimeter semi-automatic pistol. Tr. 23-24. After finding the gun and ammunition, the officers handcuffed Defendant, called both their supervisor and the New York Police Department, and determined that they should search the apartment for additional contraband. Tr. 24, 25, 34, 81-84. The officers uncovered 18 forged credit cards bearing the name "Miajan Rahman;" approximately $18,000 in cash; a hydraulic narcotics press machine; three scales; and two large bottles of a chemical commonly used as a narcotics cutting agent. Tr. 34, 81-84; GX 4-6. Probation officers also found keys to a Nissan Maxima, which Defendant used regularly but failed to report to the Probation Department. Tr. 29-31. The officers searched the Nissan Maxima and found a substance that looked and smelled like marijuana, and seven laptop computers with

P-049

labels indicating they were property of the New York City Department of Education. Tr. 31, 32, 33, 34, 69, 71, 85, 86; GX 4, 5.

2. Defendant's Objections

Defendant does not object to Judge Scanlon's recitation of the facts or the legality of the Probation Officers' visit at Defendant's home. See Dkt. No. 22, p. 2, FN 2. Defendant does object to Judge Scanlon's recommendation denying Defendant's motion to suppress on the grounds that the Government failed to meet its burden during the suppression hearing; and that the facts relied upon by the Government do not give rise to reasonable suspicion. (Objections pp. 2-3.) Specifically, Defendant asserts that the facts relied upon by the Government "at most [] gave rise to an inchoate [] suspicion... and not reasonable suspicion. In short, any suspicion raised by Mr. Harrison's actions gave no reason to believe that he was engaged in criminal activity," which can instead be "easily [] explained by a man being awakened early in the morning by a surprise visit by probation officers he never met." Objections, pp. 2-3. This Court disagrees.

3. The Government Met its Burden at the Suppression Hearing.

"It is well established that the burden of production and persuasion generally rest upon the movant in a suppression hearing." See United States v. Arboleda, 633 F.2d 985, 989 (2d Cir. 1980) (citations omitted). However, when the search was

5

conducted without a warrant, the movant can shift the burden of persuasion to the Government and require it to justify its search by a preponderance of the evidence. Id. (citing United States v. Mapp, 476 F.2d 67, 76 (2 Cir. 1973)). Here, there is no dispute that the search of Defendant's home was without a warrant, therefore, the Government must show that the search did not violate Defendant's Fourth Amendment Rights. See id.; United States v. Davis, 2015 WL 3990514, at *4 (E.D.N.Y. July 1, 2015); United States v. Chandler, 2016 WL 614679, at *1 (E.D.N.Y. Feb. 12, 2016).

The Government has a strong interest in ensuring that a releasee (or "supervisee") complies with the terms of his supervised release. United States v. Townsend, 371 F. App'x 122, 124 (2d Cir. 2010); United States v. Washington, 2012 WL 5438909, at *6 (S.D.N.Y. Nov. 7, 2012). Thus, the federal system of supervised release "presents 'special needs' beyond normal law enforcement that may justify departures from the usual warrant and probable-cause requirements." United States v. Reyes, 283 F.3d 446, 461 (2d Cir. 2002) (quoting Griffin v. Wisconsin, 483 U.S. 868, 873-74, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987)). Specifically, persons on supervised release have severely diminished expectations of privacy by virtue of their status alone. See United States v. Quinones, 457 F. App'x 68, 69 (2d Cir. 2012); Forney v. Forney, 96 F. Supp. 3d 7, 12 (E.D.N.Y. 2015) (internal quotations omitted); Washington 2012 WL 5438909, at *6.

Because of Defendant's status as a supervisee, and the specific language of the search condition, there is no question that Probation Officers were, at most, required to have reasonable suspicion to search Defendant's premises. Reasonable suspicion requires that the officer knew facts sufficient to give rise to a reasonable suspicion that criminal activity may be afoot." United States v. Bailey, 743 F.3d 322, 332 (2d Cir. 2014). It "is not whether particular conduct reflects innocent or guilty behavior, but rather, whether certain types of noncriminal acts are suspicious." Id. (citing United States v. DeLouya, 2005 WL 3244173, at *14 (N.D.N.Y. Nov. 30, 2005) (citations omitted). Importantly, this Circuit has left open the question of whether something less than reasonable suspicion applies to supervisees. See United States v. Lifshitz, 369 F. 3d 173, 180, 181, (2d Cir. 2004); United States v. Chirino, 483 F. 3d 141, 150 (2d Cir. 2007); Forney, 96 F. Supp. 3d at 13.

Defense counsel points out that the Government's interest in supervising a parolee is more serious than its interest in supervising a person who has already finished a term of incarceration and serves a time of supervised release. Objections, p. 1, fn. 1. However, this position is unsupported. See Lifshitz, 369 F.3d at 181; Forney and Washington, supra. In any event, the practical distinction is immaterial: both supervisee and parolee are subject to specific conditions in exchange for being released from incarceration. Neither one is truly "free," and the Government's "weighty interests in promoting rehabilitation and preventing recidivism" is the same in both situations. Washington, 2012 WL 5438909, at *6.

P-049

In this case, Probation Officers had, at a minimum, reasonable suspicion to search defendant's apartment and car. Moreover, the language of the search condition provides ample justification for the search, requiring only a "reasonable belief" that contraband or <u>evidence of a violation of conditions of release may be found</u>. GX 1. This language is standard for search conditions within the Second Circuit. <u>See, e.g.</u> <u>Townsend</u> and <u>Washington</u> <u>supra</u>. Courts have so far declined to define a "reasonable belief," <u>see</u> <u>Townsend</u>, 371 F. App'x at 124, however, it follows that "belief" may be a lesser standard than "suspicion" because of the supervisee's uniquely diminished expectation of privacy. Importantly, the search condition in this case does not require any belief or suspicion that a <u>crime</u> may be afoot; a search under these circumstances requires only the belief that Defendant <u>may</u> be in possession of evidence that he violated the <u>terms of his release</u>. GX1.

4. <u>Conclusion</u>

I find that the evidence and testimony presented at the December 17, 2015 hearing was more than sufficient to meet the Government's burden. Based on the Defendant's history of violations, apparent lies, nervousness, non-responses and fidgety behavior, Officer Goodman Davis reasonably suspected that Defendant was attempting to hide contraband underneath the towel, to wit: the firearm and ammunition expressly prohibited by Defendant's conditions of release. GX 1. This discovery provided a basis for suspecting that Defendant, who was serving a sentence

8

for unlawful possession of a firearm, might possess other contraband. Under the totality of the circumstances, the officers possessed at least reasonable suspicion to continue searching Defendant's property. See Quinones, 457 F. App'x at 70; Washington 2012 WL 5438909, at 6 (internal citations omitted). Upon de novo review of the recommendations, this Court adopts and affirms Magistrate Judge Scanlon's Report in its entirety.

SO ORDERED.

Dated: March 14 2016  
Brooklyn, NY

/s/ USDJ JOHNSON  
(Sterling Johnson, Jr., U.S.D.J.